CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

November 19, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Criminal Action No. 5:14cr44 |
| v. | ) |
| | ) |
| DAVID JOSUEH MEDINA, | ) By: Michael F. Urbanski |
| | ) Senior United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

Pending before the court is defendant David Josue Medina's motion for a sentence reduction filed pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 60. The Federal Public Defender was given an opportunity to file a supplemental motion on Medina's behalf but declined to do so. ECF Nos. 63, 75. On August 19, 2024, the government filed a response in opposition to Medina's motion. ECF No. 77. For the reasons set forth below, the court will **DENY** Medina's motion.

### I. Background

On November 10, 2014, Medina entered into a plea agreement in which he pled guilty to one charge of distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one charge of aiding and abetting distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). ECF No. 7. On March 25, 2015, he was sentenced to a term of 168 months to be followed by a 3-year term of supervised release. ECF No. 40. Medina currently is housed at United States Penitentiary (USP) Canaan and has a projected release

date of March 9, 2028.[1] He seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that inmates who were incarcerated during the COVID-19 pandemic and who received a COVID-19 vaccination are entitled to a sentence reduction.

## II. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (a) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Medina's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "David Josueh Medina") (last viewed November 7, 2024).

2

## A. Exhaustion

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Medina has not submitted any records showing that he exhausted his administrative remedies and the government seeks denial on this basis. However, because Medina is not entitled to relief on the merits of his claim, it is not necessary for the court to address the exhaustion issue.

## B. Extraordinary and Compelling Reason

The court next must consider whether it should reduce the term of imprisonment. Effective November 1, 2023, the United States Sentencing Commission amended the policy statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023) (USSG or guidelines).

The policy statement now provides in USSG § 1B1.13(b) that an "extraordinary and compelling" reason warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats:

(1) Medical Circumstances of the Defendant.

(2) Age of the Defendant.

(3) Family Circumstances of the Defendant.

3

(4) Victim of Abuse.

(5) Other reasons.

(6) Unusually Long Sentence.

Whether Medina is alleging that inmates who were incarcerated during the COVID-19 pandemic are entitled to a sentence reduction, or whether he is alleging that defendants who received a COVID-19 vaccination are entitled to a sentence reduction, neither circumstance presents an extraordinary and compelling reason for a reduction.

To qualify for a sentence reduction based on medical circumstances, a defendant must show one of the following:

> (A) that he is suffering from a terminal illness with an end-of-life trajectory;
>
> (B) that he is suffering from a serious functional or cognitive impairment or is experiencing deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the facility;
>
> (C) that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death;
>
> (D) the defendant is housed at a correctional facility affected or at imminent risk of being affected by an ongoing outbreak of infectious disease or an ongoing public health emergency declared by the appropriate federal, state, or local authority and that due to personal health risk factors, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the disease or health emergency and such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1).

Medina has not alleged facts to support a finding that any subsection of § 1B1.13(b)(1) applies to him. Section 1B1.13(b)(1)(D) of the guidelines addresses the availability of compassionate release during an infectious disease outbreak or an ongoing public health emergency, but neither situation exists currently. Medina is housed at USP Canaan which has zero cases of COVID-19 out of 1279 inmates.[2] Nor has an ongoing public health emergency been declared by the appropriate federal, state, or local authority.[3] In addition, Medina does not allege any underlying medical condition that would put him at increased risk of severe medical complications or death should he be exposed to COVID-19. Finally, he has been vaccinated against COVID-19, which lowers a person's risk of severe illness, hospitalization, and death from the virus.[4] Because Medina has not shown an extraordinary and compelling reason for a sentence reduction, his motion will be **DENIED**.

### C. 18 U.S.C. § 3553(a) Factors

Even if Medina were able to show an extraordinary and compelling reason for a sentence reduction, the § 3553(a) factors preclude relief. The factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

---

[2] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last viewed Nov. 7, 2024).
[3] On May 11, 2023, the United States Department of Health and Human Services announced the end of the public health emergency caused by the COVID-19 pandemic. https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html
[4] https://www.cdc.gov/vaccines/hcp/vis/vis-statements/covid-19.html (updated Oct. 17, 2024) (last viewed Nov. 7, 2024).

5

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in § 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Medina twice distributed heroin to another man who distributed it to J.H.H. Both times, J.H.H. lost consciousness and collapsed and had to be revived by emergency medical personnel. The medic in charge at the

second overdose told law enforcement officers that J.H.H. would have died from the overdose without medical intervention. Medina distributed heroin to other people as well and was found responsible for distributing 66 grams of heroin. Pre-Sentence Investigation Report (PSR), ECF No. 51 ¶¶ 5–10. The court is well aware of the destruction caused by heroin distribution in the Western District of Virginia and this factor weighs against a sentence reduction.

Turning to the history and characteristics of the defendant, Medina's criminal history included distribution of cocaine, felony assault on a law enforcement officer, carrying a concealed weapon, obstruction of justice, breaking and entering, possession of a firearm by a felon, and driving while intoxicated. Id. ¶¶ 29–32. Medina has been diagnosed with mental health issues, including major depressive disorder. He reported first using marijuana at age 11 and started drinking and using heroin intravenously at age 14. He also began using cocaine at age 25. He used the drugs regularly except during periods of incarceration. Id. ¶ 48–50. Medina was diagnosed with learning disabilities and dropped out of school in the 9th grade. Id. ¶ 51.

Medina's institutional record is notable for his having been found guilty of 28 disciplinary incidents since being incarcerated. He has been disciplined multiple times for possessing a dangerous weapon, destroying property, fighting with another person, assault without serious injury, refusing to work and being absent from his assignment. The court recognizes that Medina's learning disability, mental health issues, and addiction to drugs have no doubt affected his ability to make good decisions and appreciate the consequences of his decisions. Nevertheless, taken as a whole, Medina's history and characteristics weigh heavily against a sentence reduction.

7

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, the court finds that these factors weigh against a sentence reduction. Medina's criminal history and his institutional record show that he struggles to follow the laws of the Commonwealth and the United States as well as the rules set by his facility. The court finds that his 168-month sentence continues to be adequate, but not greater than necessary, to address the concerns expressed above, especially the need to promote respect for the law and to protect the public. None of the remaining factors weigh in favor or against a sentence reduction.

In sum, even if the court found were to find that Medina identified an extraordinary and compelling reason for a sentence reduction, it would not grant relief based on the § 3553(a) factors. Accordingly, Medina's motion for a sentence reduction under § 3582(c)(1)(A) is **DENIED**.

### III. Conclusion

For the reasons stated herein, the court **DENIES** Medina's motion for compassionate release, ECF No. 60.

An appropriate order will be issued.

It is so **ORDERED**.

Entered: November 18, 2024

Michael F. Urbanski
Senior United States District Judge